# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

REYES C. RODRIGUEZ,

    Petitioner,

v.                                                                                                CIV 97-572 JP/KBM

STATE OF NEW MEXICO, ATTORNEY
GENERAL FOR THE STATE OF NEW MEXICO,
CHARLES CRANDELL, WARDEN, Central Arizona
Detention Center,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Reyes Rodriguez's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 following dismissal of his double jeopardy claim and an evidentiary hearing on his ineffective assistance of counsel claims. I have considered the arguments, pleadings, relevant law, and have thoroughly reviewed all of the tapes of the state court proceedings and the transcript of the evidentiary hearing held here. Based on that review, I recommend that the petition be denied.

### I. Factual & Procedural Background

### A. Evidence At Trial

Two families are at the heart of this case – Petitioner's family and the Granger family. In July 1988, Petitioner's sister was married and a fight broke out at the dance that followed the reception. Bobby Granger's wife instigated the fighting, which immediately escalated to a brawl involving several people, including Bobby Granger. Petitioner's cousin, Danny Lovato, had teeth

knocked out. The police responded and Petitioner, though not a participant in the fight itself, was arrested for his reaction to the events.

About two hours after Petitioner was released on bond, the Granger family home was firebombed with a Molotov cocktail. Twelve members of the family were inside the residence at the time, but they all escaped the house with minor injuries and were able to extinguish the fire. Shortly after the police searched his car, Petitioner fled. For the next two years police from Carlsbad, New Mexico and the Federal Bureau of Investigation unsuccessfully pursued him as a fugitive. Eventually, Petitioner voluntarily turned himself in and was extradited from California to stand trial in New Mexico, where he was represented by District Public Defender Rebecca L. Reese.

Petitioner's whereabouts on Sunday July 17, 1988 between 3:00 a.m. (the time he left the police station) and 4:45 to 5:00 a.m. (when the house was firebombed) was a key issue in the case. For the State, three Granger brothers testified that they saw a car matching the description of Petitioner's drive slowly past their family home a half an hour or so before the house was firebombed. The brothers could not see the driver, any occupants of the vehicle or the license plate number, but Bobby Granger recognized the car as belonging to Petitioner and gave chase. Granger did not pursue long and stopped at a nearby Allsups convenience store to call police and complain that Petitioner had driven by his home. Petitioner's alibi witnesses testified that Rodriguez and Danny Lovato were drinking from a "big glass container" outside Petitioner's mother's house from 4:00 a.m. until 6:00 a.m., and possibly as late as 7:00 a.m.

With these conflicting versions about Petitioner's whereabouts, the testimony of the other witnesses was important. The police officers who responded to the fight testified that Petitioner

had been arrested at the scene of the fight because he was flailing his arms and shouting that he would get the "sons-of-a-bitches" and "f--- them up." In the officer's car, he complained that the Grangers had ruined his sister's wedding.

Douglas Rich, a former coworker of Petitioner, was employed as the overnight clerk in the Allsups store near the Granger home and, apparently, the same store where Bobby Granger had stopped to make the telephone call. Rich testified that around 3:45 a.m., Petitioner drove his Black Dodge Charger into the parking lot and came into the store drunk, fumbling, smelling of alcohol, and asking for a "glass bottle." Petitioner bought a half-gallon of Kraft orange juice in a glass container and proceeded to pour the orange juice out in a sink or bucket near the cash register. Rodriguez became verbally aggressive with Mr. Rich, saying that the clerk would read about him in the newspaper. Petitioner then left with the empty orange juice container in hand.

Sean Duperron[1] (an acquaintance of Petitioner's who had done mechanical work on Petitioner's car) and Tommy Jobe (who was sleeping at Duperron's house that morning) testified that Petitioner woke them between 6:00 and 6:30 a.m. on that July 17th and requesting help in pulling his car out of a ditch on the outskirts of town. They did so, and during these efforts Petitioner told them that he had bombed a house to "get even" with the Grangers.

Pieces of the Molotov cocktail container found in the Granger home bore part of a label from an orange juice container. During their investigation, the police retrieved a half-gallon of Kraft orange juice that sat on the store shelf next to the one that Petitioner purchased. Forensic expert testimony established that the labels from the two containers were identical and that the bar codes matched. In addition, Petitioner's car was searched at 9:00 a.m. the same morning of the

---

[1] In parts of the record this name is spelled DuPerron.

firebombing. Within the black car, police found diapers and a length of garden hose that smelled of gasoline. Forensic expert testimony established that the diapers matched the material used to make the wick of the Molotov cocktail.

The prosecution also called Mrs. Duarte, Petitioner's stepmother. On the stand she denied she had related to the FBI that Petitioner told her he had firebombed the house and regretted that none of the victims died. In immediate rebuttal to the denial, the prosecutor called the FBI agents to testify Duarte had previously told them Petitioner made those statements.

The jury found Petitioner guilty of arson, dangerous use of explosives/incendiary device, possession of explosives/incendiary device, and twelve counts of aggravated assault. For sentencing purposes the first three counts (arson, dangerous use, possession) were merged and the sentence imposed for those counts ran consecutive to the sentences on the twelve remaining counts. His sentence was further enhanced for prior drug trafficking convictions. He received a total sentence of thirty-six years incarceration.

### B. Prior Proceedings In State Court

Petitioner pursued a direct appeal in state courts first through trial counsel and then through private counsel. The issues on appeal changed over time.[2] The New Mexico Court of

---

[2] The docketing statement filed by trial counsel, Ms. Reece, among other things, raised the four categories of ineffective assistance of trial counsel listed in footnote 4. Private counsel requested that the court only address the ineffective assistance of counsel claims it could based on the record before it, arguing that if necessary claims that could not be resolved on the record would be raised in postconviction proceedings where facts outside the record could be developed. Later in the proceedings, private counsel added two new ineffective assistance of counsel claims arising from Mrs. Duarte's testimony. *See Answer, Exh. H., p. 8; id., Exh. R, p. 11.*

Appeals decided certain ineffective assistance of counsel claims[3] and declined to review others[4] because there was an "insufficient factual basis for review of [those] claims on direct appeal. . . . they are more properly suited to review in a postconviction proceeding." *State v. Rodriguez*, 113

---

[3] The New Mexico Court of Appeals decided the following five issues:
  (1) double jeopardy regarding the use and possession counts
  (2) denial of change of venue;
  (3) prosecutorial misconduct in impeaching Mrs. Duarte with hearsay;
  (4) ineffective assistance of trial counsel in failing to object to the impeaching hearsay; and
  (5) ineffective assistance of trial counsel as appellate counsel in failing to raise the Mrs. Duarte issue in the docketing statement.

[4] The four categories of ineffective assistance claims identified in the docketing statement which the Court did not entertain were:
  (1) failing to adequately investigate
     a. "[f]abricated evidence and innuendo against defendant"
     b. "[r]ebuttal witnesses and to move for a continuance at the close of the State's case to obtain testimony from approximately four rebuttal witnesses which defendant remembered at trial"
     c. a "conspiracy" between the trial judge, prosecutor, police detective, police department and the victims' extended family
     d. "[a]ll positions of authority, elected office and law enforcement employment every held by any persons related to" the victims
     e. "[e]very newspaper, television and radio report referring to the case during the 2-1/2 years between the fire-bombing and defendant's trial;"
  (2) inadequate trial preparation
     a. "[b]y failing to seek further bond reduction after two motions for reductions were denied"
     b. "[d]ue to lack of funding within the Department and attorney case overload"
     c. "[b]ecause of denial of a motion for change of venue"
     d. "[b]ecause of attorney's failure to be fully familiar with the facts of the case"
  (3) "refusal to impeach prosecution witness, Douglas Rich, by questioning him about money loaned to him by defendant to finance the purchase of marijuana by Rich for resale at a profit. Counsel did not elicit that hard feelings developed between defendant and Rich when Rich refused to repay the loan;" and
  (4) "attempt by defense counsel to curry favor with the prosecutor and the Trial Court by sacrificing defendant to obtain favorable rulings and lenient sentencing in counsel's future cases, thereby enhancing trial counsel's 'track record' as District Public Defender."

*Answer, Exh. F, pp. 14-15.*

N.M. 767 (Ct. App. 1992) *(attached to Answer as Exh. R)*. The New Mexico Supreme Court denied certiorari on April 8, 1992 *(attached to Answer as Exh. T)*.

While his direct appeal was being pursued, Petitioner filed a *pro se* complaint with the New Mexico Supreme Court Disciplinary Board raising numerous arguments of ineffective assistance of counsel. *See 3/12/99 Transcript Vol. II. at 86-88 (Respondents' Exhibit 1 – "Reece Disciplinary Board Response")*. The record also reflects that Petitioner never pursued post-conviction relief in the state courts.

### C. Prior Proceedings In This Court

Five years after his conviction became final and on the last day of the grace period permitted under the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] (April 23, 1997), Petitioner filed a *pro se* habeas corpus petition. Because he filed after the effective date of AEDPA, its provisions apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). Originally Petitioner raised a claim of failure to disclose favorable evidence, but he withdrew that claim after Magistrate Judge Smith proposed dismissing the petition as unexhausted.[5] That left only Petitioner's double jeopardy claim and ineffective assistance of

---

[5] I also note that the claim was never presented to any state court and is thereby procedurally defaulted. New Mexico courts routinely dismiss claims not involving fundamental error for failure to raise them in the direct appeal. *Jackson v. Shanks,* 143 F.3d 1313, 1317-19 (10th Cir.) ("Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief."), *cert. denied,* 525 U.S. 950 (1998). To the extent this claim is part of Petitioner's ineffective assistance of counsel claims, it cannot serve as "cause" for the procedural default because the ineffectiveness argument itself never was presented to the state courts. Nor does the record establish a "fundamental miscarriage of justice." *See Edwards v. Carpenter,* 529 U.S. ___ , 120 S.Ct. 1587 (2000).

 In addition, I find the claim is wholly without merit. The evidence not disclosed was the arrest record of one of the Grangers who was in the house when the firebombed. *See Reece Disciplinary Board Response, pt. 15.* This witness was under subpoena but did not testify at trial

counsel claims. *See Docs. 17, 22, 24, 26.*

The double jeopardy claim has already been rejected by the District Judge. *See Docs. 56, 64.* As to the remaining claims, Judge Smith appointed counsel for Petitioner[6] and an evidentiary hearing was held on March 12, 1999 in which Ms. Reece testified. The hearing was continued because Petitioner, who was going to testify, was not transported to the Court due to a mix-up where he was located.

Following the hearing this case was referred to me, and I reset the continued evidentiary hearing. However, appointed counsel moved to withdraw and Petitioner concurred asking for an new attorney. I granted the motion noting that "[i]t appears that the matter may now be in a posture where the remaining issues can be decided. As such, the Court desires to review the entire matter in greater depth. If after this review, the Court determines that issues remain and require further evidentiary hearings, counsel will be appointed at that time." *Doc. 81.*

---

because, rather than have each of the twelve members go before the jury and testify about their traumatic experience, trial counsel stipulated that this witness and everyone else in the house that night would testify that they were afraid of being burned. *See Record Proper, p. 109; 3/12/99 Transcript, Vol. I, pp. 57-59.* Under the standards set forth above, this is neither deficient performance by counsel nor is there any prejudice to Petitioner.

[6] The Federal Public Defender was originally appointed to represent Petitioner, but was later permitted to withdraw because of a conflict of interest. However, it did file a brief elaborating on Petitioner's claims and successfully argued that an evidentiary hearing be held. Judge Smith then appointed counsel from the CJA panel to represent Petitioner at the evidentiary hearing. Initially Rodriguez was dissatisfied with this attorney and requested he be removed, but following a hearing where Judge Smith advised that he would not appoint another attorney if counsel was permitted to withdraw, Plaintiff withdrew that request. *See Docs. 25, 35, 38-39, 41-43, 45, 66.*

## II. Analysis

### A. Respondents' Waiver of Unexhausted Ineffective Assistance of Counsel Claims -- Court Has Discretion To Entertain Them

Petitioner raises all of the ineffective assistant of counsel arguments that he raised on direct appeal.[7] By failing to pursue postconviction relief in the state courts, the majority of these claims are unexhausted.[8] By filing on the last day of the grace period, it is not possible to further exhaust within the statutory period even if the time spent in subsequent state court proceedings is tolled.

However, in its Answer, Respondents "concede[d] Petitioner has exhausted his state court remedies as to [the ineffective assistance of counsel claims]." *Answer, pp. 1-2.* Based on this unequivocal concession, I find that the state has waived the exhaustion requirement for these claims. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). As in pre-AEDPA cases under *Granberry v. Greer,* 481

---

[7] The grounds for his claims are apparent from the state court record, the brief filed by the Federal Public Defender, the response Ms. Reece filed with the New Mexico Supreme Court Disciplinary Board, and the questioning and testimony presented at the evidentiary hearing in these proceedings.

[8] To exhaust claims, Petitioner must "fairly present" them to the state court so that the state court can pass on the merits of them. Petitioner could have presented all of his ineffective assistance of counsel claims in a state postconviction proceedings, including all of those raised on direct appeal, but chose not to do so. *See Duncan v. Kerby,* 851 P.2d 466 (N.M. 1993). Where, as here, most of the claims were "'presented for the first and only time in a procedural context in which its merits will not be considered [by the state court] . . .[r]aising the claim in such a fashion does not, for the relevant purpose, constitute fair presentation." *Parkhurst v. Shillinger,* 128 F.3d 1366, 1369 (10th Cir. 1997) (quoting *Castille v. Peoples,* 489 U.S. 346 (1989)); *see also Edwards v. Carpenter,* 529 U.S. ___ (2000) (discussing comity purposes served by exhaustion requirement).

8

U.S. 129 (1987), this Court has the authority to dispose of unexhausted claims that are without merit, as I find below. 28 U.S.C. § 2254(b)(2); *see also e.g., Slack v. McDaniel,* 529 U.S. ___, 120 S.Ct. 1595 (2000); *Brown v. Shanks,* 185 F.3d 1122, 1125 (10th Cir. 1999).

### B. Standard of Review in Post-AEDPA Cases

Under cases governed by AEDPA, a federal court cannot grant a writ of habeas corpus unless (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent, or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2), (e). As recently recent pronouncements by the Supreme Court indicate, a federal habeas court can only grant the writ if it finds that the

> state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case. . . . We may not issue the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly. Rather, we must be convinced that the application was also objectively unreasonable.

*Van Woudenberg v. Gibson,* ___ F.3d ___, 2000 WL 525950 at *2 and *12 n.4 (10th Cir. 2000) (citing *Williams v. Taylor,* No. 98-8384, 529 U.S. ___, 120 S.Ct. 1495 (2000)). The AEDPA standards apply if a state court decides a claim on the merits. If a state court does not address the claim on the merits the standards do not apply and the federal habeas court decides the issue in the first instance. *Van Woudenberg,* 2000 WL 525950 at *2 (citing *La Fevers v. Gibson,* 182 F.3d 705, 711 (10th Cir. 1999)).

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffective assistance of counsel claims under federal constitutional standards in post-AEDPA cases. *E.g., Mayes v. Gibson,* ___ F.3d ___, 2000 WL 543400 (10th Cir. 2000). Petitioner must

show that counsel's representation was "objectively unreasonable." In undertaking this analysis, the Court does not analyze counsel's conduct "through the distorting lens of hindsight, but *from counsel's perspective at the time of the alleged error.*" *Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999) (emphasis added). To be "constitutionally ineffective," counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999). A "wide range" of conduct is considered to be trial strategy and deemed "reasonable professional assistance." Petitioner must overcome the "strong presumption" that counsel's conduct falls within that category. *E.g., Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).

Petitioner must also establish "prejudice" or that absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different. In making this assessment, the Court looks at "the totality of the evidence, not just the evidence helpful to the petitioner." *Moore,* 195 F.3d at 1178. "Reasonable probability" means confidence in the outcome is undermined. *E.g., Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999). The ultimate inquiry is whether the trial was fair and the jury's judgment was reliable: "We do not simply examine whether the petitioner was likely to obtain a reversal of his conviction or a new trial on appeal. . . . 'an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.'" *Newsted v. Gibson,* 158 F.3d 1085, 1092 (10th Cir. 1998) (quoting *Lockhart v. Fretwell,* 506 U.S. 264, 369 (1993)).

The ineffective assistance of counsel ("IAOC") claim fails if either of the *Strickland* prongs are not met. It is entirely appropriate for a habeas court to analyze the prejudice prong

first and exclusively, if that is the easier course. *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir. 1999); *Cooks v. Ward,* 165 F.3d 1283, 1292 - 1293 (10th Cir. 1998).

### C. State Court Decision Of The IAOC Claims Concerning Mrs. Duarte's Testimony Was Reasonable Application of Correct Legal Standard Under *Strickland*

The only ineffective assistance of counsel claims decided by the state court were whether trial counsel was ineffective: (1) in failing to object to the FBI agent impeachment of Mrs. Duarte at trial as violation of *State v. Duran,* 107 N.M. 603 (1988) (*superceded by rule on other grounds see State v. Gutierrez,* 969 P.2d 970 (NM. 1998)); and (2) in failing to raise the issue on appeal. Under *Duran,* it is improper for the prosecution to call a witness who is favorable to defendant solely for the purpose of impeaching that witness with prior statements. Even if this misconduct occurred, however, it is not reversible error unless defendant demonstrates prejudice. If the court finds sufficient evidence to convict, the error will be held harmless. *See State v. Varela,* 993 P.2d 1280, 1288-89 (N.M. 1999); *State v. Litteral,* 110 N.M. 138, 143 (N.M. 1990).

On direct appeal, the New Mexico Court of Appeals did not address whether the prosecution's purpose was improper under *Duran*. Instead, it found the prosecutorial misconduct claim without merit because there was no "fundamental error," reasoning that:

> [T]he evidence against defendant included direct evidence of the altercation at the wedding and eyewitnesses seeing him drive past the victims' house shortly before the fire-bombing. There was circumstantial evidence that, before the fire-bombing, defendant purchased a glass bottle of orange juice at a convenience store because a plastic water bottle would not do. A similar glass bottle was found at the scene, and cloth diapers and a hose smelling of gasoline were found in defendant's car. Forensic analysis tied these items to the crime scene. In contrast, members of defendant's family provided defendant with an alibi. The easily discredited alibi was no match for the strong circumstantial and direct evidence against defendant. Therefore, we find that no miscarriage of justice has occurred, and we will not invoke the doctrine of fundamental error.

*Rodriguez*, 113 N.M. at 774.

In rejecting the ineffective assistance of counsel claims based on the impeachment of Mrs. Duarte, the New Mexico Court of Appeals relied on the above finding. It applied a *Strickland v. Washington* standard and rejected the claims because it found no prejudice:

> For the reasons stated [regarding prosecutorial misconduct], defendant has failed to demonstrate that he was prejudiced in such an extreme way that the adversarial process cannot be relied upon as having produced a just result. . . . The evidence against defendant in this case was very strong, and defendant has not shown that but for counsel's conduct concerning these matters, the result of the proceeding would have been different.

*Rodriguez*, 113 N.M. at 774 (citing New Mexico cases that apply a *Strickland* standard of review, *e.g, State v. Taylor,* 107 N.M. 66 (N.M. 1988), *overruled in part on other grounds Gallegos v. Citizens Ins. Agency,* 108 N.M. 722 (N.M. 1989) (re: docketing statements in New Mexico Supreme Court); *State v. Talley,* 103 N.M. 33 (N.M. Ct. App. 1985)); *see also State v. Hernandez,* 115 N.M. 6, 16-17 (N.M. 1993)).

An independent review of the record is unnecessary to decide this particular claim. Nevertheless, I have thoroughly reviewed the entire state court record as well as testimony and evidence presented in this Court because of the posture of the case upon referral, because most of the claims were not addressed at the state level, and because of the subsequent developments with appointed counsel. Based on that review, I find that Petitioner did not receive ineffective assistance of counsel and that the state court decision is not an unreasonable application of *Strickland*. Accordingly, these claims afford no grounds for habeas relief.

### D. Change of Venue Determination Is Entitled To Deference In Connection With The IAOC Claim

At trial as here, Petitioner maintained that certain members of the extended Granger family

12

were "well-known" in Carlsbad and influential in "politics and the judicial process" because of their alleged former or current positions as sheriff, police officer, probation officer, parole officer, jailer, or bail bondsmen.[9] He contends that the Granger "influence" along with the publicity surrounding his flight and return entitled him to a change of venue. *See Answer, Exh. O, p. 25 (Def. Brief on Appeal); Doc. 38, pp. 25-26, 28 (FPD Habeas Brief); Reece Disciplinary Board Response, pts. 10-11.*

Petitioner's claim is not based on a failure to pursue the motion for venue change, but on counsel's "failure" to introduce more articles in support of the motion. Counsel testified that her law clerk researched and found the four articles in the local newspaper that were introduced to the trial judge. The law clerk was unable to obtain any recorded broadcasts from radio or TV stations or from Crimestoppers, Inc. because any information around the time of the crime and Petitioner fleeing the scene was too old and, therefore, impossible to obtain. Despite repeated requests from counsel, Petitioner's family produced articles from an El Paso newspaper only after the motion had been denied. S*ee 3/12/99 Transcript, Vol. I at 22-26; Reece Disciplinary Board Response, pts. 10-11.*

Under New Mexico law, a criminal defendant is entitled to a change of venue when he meets his burden of demonstrating to the trial judge that, due to pretrial publicity or other local bias, he cannot obtain a fair trial. *E.g, Hernandez,* 115 N.M. at 21-22. Just because media stories

---

[9] Trial counsel sought to introduce evidence of the Grangers' alleged influence through Petitioner's testimony at the change of venue hearing, but the trial judge found it unnecessary because he was familiar that a Granger had been a County Sheriff. Trial counsel also indicated to the Disciplinary Board that it was common knowledge that one of the members in the Granger extended family had been a probation officer and was now an attorney, and that another supervised the Juvenile Detention Center. Those were the only positions of influence that counsel found with regard to the Grangers. *Reece Disciplinary Board Response, pt. 10.*

13

may be numerous does not raise a presumption of prejudice. *E.g., Deats v. State,* 80 N.M. 77, 80 (N.M. 1969). On direct appeal, the New Mexico Court of Appeals found that the trial judge did not abuse his discretion in denying Petitioner's motion for a change of venue because

> [t]he trial court found that no recent publicity had been given to the case; that the publicity which had occurred over six months earlier was no greater than that given to other, similar matters; and that the issues of pretrial publicity and relationships with the victims could be adequately probed during voir dire. During voir dire, prospective jurors were questioned concerning their knowledge of the events at issue and the people involved, and none of them reported any knowledge concerning the case or potential partiality concerning the people involved.

*Rodriguez*, 113 N.M. at 773*; see also State's Brief on Appeal at 10-11; Record Proper at 111 (trial judge's written findings).*

The factual finding by the New Mexico Court of Appeals that prospective jurors were questioned and none reported knowledge or partiality concerning the case has not been rebutted and is entitled to the presumption of correctness. 28 U.S.C. §§ 2254(d)(2), (e)(1). Furthermore, Counsel also testified in this proceeding about *voir dire* practice generally, and I have listened to the tapes of the motion hearing and *voir dire,* where both the trial judge and defense counsel engaged in extensive questioning of the prospective jurors.[10] Based on my review of the record, I find that even if more articles or the like had been introduced either at the change of venue

---

[10] After the witnesses were introduced to the jury, the trial judge asked the jurors whether they knew any of the witnesses or their families or anyone connected with law enforcement anywhere. When they indicated yes, he followed up with questions designed to investigate the degree of the relationship and whether relationships other than mere acquaintance would influence the juror in any way. When he asked whether anyone had knowledge of the case or had heard or read about it in the media, whether anyone would put more or less weight on the testimony of officers, and whether they were aware of anything having bearing on the case, no one responded. Trial counsel followed up with her own questions to the panel generally, as well as specific questions to certain jurors who indicated that they knew a witness or had friends or relatives in law enforcement. *TR Tapes 1-3; 3/12/99 Transcript Vol. II, pp. 78-80.*

14

hearing or at a subsequent one, it would not have produced a different outcome. The trial judge found that *voir dire* would be adequate to address issues of bias and publicity. A thorough *voir dire* was conducted that elicited no grounds to believe that prospective jurors had in any way been affected or could not be impartial and elicited more than enough information upon which to base challenges. Indeed, there has never been a claim in the state proceedings or here that any of the jurors who were seated were not impartial. *See e.g., Mayes,* ___ F.3d ___, 2000 WL 54300. Accordingly, Petitioner's ineffective assistance of counsel claim fails because he has shown neither that counsel was ineffective nor that he was prejudiced.[11]

## E. The Claims Not Addressed At The State Court Level Fail To Establish Ineffectiveness or Prejudice

### (1) Counsel's Conduct Was Objectively Reasonable

Petitioner generally contends that his trial attorney failed to adequately investigate his case and prepare for trial. Rodriguez ascribes at least part of the alleged failure to investigate and prepare due to a lack of funding for the public defender and to the death of trial counsel's father. As the Supreme Court has explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. In any

---

[11] *E.g, Gillihan v. Rodriguez,* 551 F.2d 1182 (10th Cir.) (counsel not ineffective where publicity not significant), *cert. denied,* 434 U.S. 845 (1977); *Parsons v. Galetka,* 57 F. Supp.2d 1151, 1184-84 (D. Utah 1999) (counsel's failure to move for change of venue not ineffective because, absent showing of juror bias, not entitled to change of venue under state law and also because no showing of prejudice under *Strickland*); *see also Baldwin v. Johnson,* 152 F.3d 1304, 1315 (11th Cir. 1998) (decisions not to pursue change of venue are tactics, and no prejudice shown if fail to establish motion would have been granted under state law).

ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In both her response to the Disciplinary Board and in her testimony here, trial counsel described in detail how she investigated and prepared for the case and I will not reiterate the testimony here. These accounts demonstrate that counsel's investigation and preparation was eminently reasonable, that an investigator and law clerk were available to assist, that she consulted Petitioner, kept him apprised of developments, followed up on his suggested leads, and that she secured a two month continuance after having been out approximately four weeks tending to her ill father and to matters following his death.

Petitioner specifically complains that trial counsel failed to impeach the testimony of Douglas Rich by showing he had a motive to lie about Petitioner buying the orange juice bottle. Petitioner maintains he and Rich were involved in a "drug deal gone bad" and, therefore, Rich harbored "bad feelings" about Petitioner. Counsel explained that she did not impeach on that basis because, as a matter of trial tactic, she did not want the jury to associate drugs with her client. *3/12/99 Transcript, Vol. I. at 40-42.* Such a strategy could hardly be said to be unreasonable.

Petitioner makes similar complaints that counsel failed to aggressively pursue a theory that the history of "bad blood" between Petitioner's family and the Granger family motivated Granger witnesses to "frame" Petitioner. As with Mr. Rich, it is likewise apparent that emphasizing long-standing bad blood between the families cuts both ways. While Petitioner thinks this line of questioning would impeach the Grangers' testimony, it equally could have provided the jury with

16

more information upon which to find a motive for Petitioner to firebomb the Granger home.

Counsel explained her trial strategy in her response to the Disciplinary Board as follows:

> [The] only viable defense was an alibi provide by the testimony from his younger sister, his cousin Danny Lovato, and Danny Lovato's wife, Kathy. I also argued at closing that the State had failed to prove certain elements of the offense of many of the counts and pointed out that much of the incriminating circumstantial evidence had been explained to be innocent coincidence by the evidence.
>
> * * * * *
>
> There were few conflicts in the evidence presented by the State. The State's witnesses had almost all given statements or made reports or testified or been interviewed before the trial. I can safely say there were no major surprises in the State's case and few inconsistencies. I did my best emphasize the inconsistencies or lack of opportunity to observe (mostly due to admitted drunkenness of some of the State's fact witnesses) on cross-examination. Also, I reminded the jury of these during closing argument.

*Reece Disciplinary Board Response, pts 3, 8.*

Petitioner also specifically complains that trial counsel failed to call the rebuttal witnesses he requested. The State had introduced evidence that Petitioner had gone in the early morning hours to Duperron's house and made statements to the effect that he had firebombed the Granger house to "get even." During the trial, Petitioner suddenly remembered that a "Mr. Morales" was at the house when Rodriguez claims that he had read a 5:00 a.m. edition of the paper mentioning the fire bombing. Petitioner alleges that his remarks were made in this context and were misconstrued by Mr. Duperron and Mr. Jobe.

Petitioner stated that although Mr. Morales was in a "permanent vegetative state," Mr. Duperron would remember the incident. Counsel questioned Mr. Duperron, who had no recollection of this version of the events. She did not move for a continuance to locate Mr. Morales because, according to Petitioner, Morales was not competent and Mr. Duperrron could

not verify his presence. Moreover, the State could have discredited Rodriguez' version of events because the first newspaper article did not, in fact, appear until the day after the firebombing.[12]

Petitioner's asserts that trial counsel was not loyal to him, instead "currying" favor with the prosecution and the trial court. This assertion is not only patently frivolous on its face, it is wholly without merit, particularly in light of counsel's testimony and response to the Disciplinary Board. Rodriguez' remaining assertions regarding inadequate investigation and trial preparation are related to matters already discussed.[13] Once again, having thoroughly reviewed the record I find that counsel's investigation, preparation, decisions, and trial strategy were objectively reasonable and Petitioner's ineffective assistance claims lack merit.

### (2) Petitioner Cannot Establish Prejudice

Having reviewed the tapes of the state court proceeding, I also find the procedures at trial were fundamentally fair, the jury's judgment is reliable and that based on the totality of the

---

[12] In this same vein, it was not until two months *after* the trial that Petitioner first claimed that Duperron's wife and sister-in-law were also at the house that morning. *Reece Disciplinary Board Response, pt 5; see also 3/12/99 Transcript, Vol. I, pp. 69-72*.

[13] The Federal Public Defender who was appointed counsel added two grounds not already addressed above. Neither has been presented to the state courts and neither has merit: (1) that trial counsel "aggressively brought out discrepancies between recorded statements give to the police and the defendant's accusers at the preliminary hearing" but failed to do so and was inept at trial; and (2) that retained appellate counsel was ineffective because she failed to get the preliminary hearing tapes when preparing the appeal. *FPD Brief at 27*.
I have listened to the tapes and cannot so characterize counsel's performance. The reason for the more aggressive stance during the preliminary hearing is apparent -- counsel try to use preliminary hearings as a means for discovery and to pin witnesses to inconsistencies. The "inconsistencies" at the preliminary hearing were either not of the type that make a witnesses' testimony contradictory or explained by the witness, leading counsel nowhere. At trial the witnesses were consistent in their testimony. The same aggressive tactic at trial can make counsel appear argumentative, reaching, and can antagonize the jury, hurting the client's interests. Yet even if the conduct of trial and appellate counsel were found deficient, Petitioner's claim would still fail for lack of prejudice.

evidence, there is no reasonable probability that the outcome of the trial would have been different. As such, Petitioner cannot establish prejudice and his ineffective assistance of counsel claims independently fail on this ground.

### F. Further Evidentiary Proceedings Are Unnecessary

Habeas petitioners who fail to pursue available state court proceedings that will develop the factual basis for his claims, are only entitled to a federal evidentiary hearing in severely limited circumstances.[14] It is also unnecessary to conduct an evidentiary hearing on ineffective assistance of counsel claims if the record contains the materials necessary to resolve them. *E.g., Trice,* 195 F.3d at 1159; *Foster v. Ward,* 182 F.3d 1171, 1184 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 1438 (2000). I have reviewed the entire record in this matter and for the reasons set forth above, it is sufficient to resolve the claims and unnecessary to conduct further evidentiary proceedings.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be denied and this action be

---

[14] Petitioners who bypass state proceedings are not entitled to an evidentiary hearing in federal court unless they show that the claims for which they seek a hearing are based on either (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." After satisfying that requirement, Petitioner must additionally show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2); *see also Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999) (AEDPA); *Miller v. Champion,* 161 F.3d 1249, 1253 (10th Cir. 1998) (AEDPA); *Hoxie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir. 1997) (pre-AEDPA holding court did not err in declining to hold an evidentiary hearing on ineffective assistance of counsel where district court found performance was not deficient where "the evidence that [Petitioner] seeks to introduce 'must have been inadequately developed in state court for reasons not attributable to petitioner's 'inexcusable neglect' or 'deliberate bypass'" but "for reasons unknown, [Petitioner] deliberately bypassed his opportunity to seek an evidentiary earing on his ineffective assistance claim in a state habeas corpus proceeding," quoting *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1536 (10th Cir. 1994)).

dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE